**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **K.R. and C.R.**

**No. 20-0879** (McDowell County 18-JA-94 and 18-JA-95)

## MEMORANDUM DECISION

Petitioner Mother B.R., by counsel Thomas H. Evans III, appeals the Circuit Court of McDowell County's September 24, 2020, order terminating her parental rights to K.R. and C.R.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order and a supplemental appendix. The guardian ad litem, Andrew Waight, filed a response on behalf of the children also in support of the circuit court's order and a supplemental appendix. On appeal, petitioner argues that the circuit court erred in denying her motion for a post-adjudicatory improvement period and terminating her parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In September of 2018, the DHHR filed an abuse and neglect petition alleging that petitioner's untreated mental illness and substance abuse impacted her ability to parent. Specifically, a law enforcement officer found petitioner parked dangerously along the side of the road and acting agitated and disoriented. She appeared overwhelmed by then-three-year-old C.R. who was crying and wearing soiled clothes. Petitioner explained to the officer that she takes medication for anxiety but had not taken her dose the day before. She also stated that she and the child were both ill and had just left the hospital. The officer observed that petitioner had no change of clothes for the child. He also learned that petitioner had a revoked driver's license, so he arranged for the maternal grandmother to pick up petitioner and C.R. That evening, a Child

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

Protective Services ("CPS") worker investigated and learned that the maternal grandmother babysits C.R.'s older half-sibling, K.R., while K.R.'s father works and that petitioner can only visit K.R. in the presence of the maternal grandmother per a family court order. C.R.'s father stated that petitioner abuses drugs, potentially methamphetamine, and that petitioner was emotionally unstable. When the worker attempted to speak with petitioner, she was uncooperative and could not remain focused, and when asked about the allegations of drug abuse, petitioner became irate and called 9-1-1. Law enforcement officers arrived at the home, and petitioner continued to be combative with the CPS worker and appeared to be "over medicated." Law enforcement officers observed petitioner's pupils to be dilated and believed she was under the influence of a substance. At that time, C.R.'s father took custody of C.R. and agreed to a protection plan. K.R.'s father took K.R. home with him. Petitioner refused to cooperate and participate in a protection plan, thus forcing the DHHR to file the underlying petition.

Petitioner waived her preliminary hearing in October of 2018, and the circuit court ordered that petitioner complete a psychological evaluation, which she partially completed in December of 2018. The evaluation indicated that petitioner was too distracted to complete the questions but, in the psychologist's opinion, petitioner suffered from untreated mental illness with serious delusions, opioid use disorder, methamphetamine use disorder, post-traumatic stress disorder, and relationship distress with partner. Petitioner's insight was deemed poor as she appeared to have little understanding of the relationship between her emotions, cognitions, and behaviors. The psychologist's opinion was that petitioner's prognosis for achieving minimally sufficient parenting was poor, but he recommended that petitioner enroll in an intensive inpatient mental health and drug treatment program.

At a status hearing in February of 2019, the DHHR reported that petitioner tested positive for methamphetamine in January of 2019. The circuit court ordered petitioner to return to finish her psychological evaluation, but she failed to do so. In March of 2019, the circuit court reviewed a text message from petitioner to the DHHR worker which stated the following: "I wanted to let you know I choose not to participate in the safety plan or parenting or any other services CPS has coerced me to participate in since these are supposed to be voluntary."

The DHHR filed an amended petition in April of 2019, alleging that petitioner continued to live in the home with C.R and C.R.'s father who perpetuated domestic violence against petitioner in the presence of C.R. At a status hearing the same month, the circuit court ordered C.R.'s father and petitioner to not have contact and that he was required to move out of the home by April 25, 2019, with the assistance of the DHHR. In September of 2019, the DHHR filed a second amended petition alleging that petitioner refused to cooperate with any services and declined mental health treatment. The DHHR further alleged that C.R.'s father continued to perpetuate domestic abuse in the home in the presence of the child. In October of 2019, C.R.'s father and petitioner each sent various self-represented letters to the circuit court.

The circuit court held adjudicatory hearings in October of 2019, during which it noted that the various letters to the court were "devoid of logic and reason, and are nothing more than inarticulate and indecipherable ramblings." The circuit court explained that it would not consider the letters for purposes of adjudication but would consider them for purposes of disposition. The DHHR presented the testimony of Mr. David Lawson, M.A., the psychologist who performed

petitioner's psychological evaluation. Mr. Lawson testified that petitioner appeared two-and-a-half hours late for the first appointment, during which she took two forty-minute restroom breaks and failed to complete the evaluation despite ample time do so. After petitioner failed to return to complete the evaluation, Mr. Lawson stated that he formed a summary evaluation and diagnosis. He opined that petitioner displayed psychotic symptoms, could not function at an adequate level to care for the children, and needed to enroll into intensive inpatient mental health and drug treatment.

Next, a CPS worker testified about the October of 2018, incident described above, wherein the law enforcement officer discovered petitioner on the side of the road with C.R. Explaining the aftermath of this incident, the CPS worker testified that when she went to petitioner's home to discuss the allegations of substance abuse, petitioner became irate, called the police, and remained on the phone with the 9-1-1 operator during the entire visit, refusing to speak to the CPS worker. Law enforcement officers appeared and stated to the worker that they suspected petitioner was intoxicated from drugs. After removal, petitioner refused to submit to drug screens or participate in parenting and adult life skills, and information about her refusal was included in the second amended petition. Thereafter, law enforcement officers testified to responding to petitioner on the side of the road in a state of distress, exhaustion, and confusion, and later responding at the home, where they observed that petitioner's pupils were dilated and thus concluded that petitioner was likely under the influence of methamphetamine. Another CPS worker testified that petitioner had refused to submit to drug screens and refused to participate in any of the DHHR's services.

Petitioner testified that C.R. had been ill with a fever and she was almost out of gasoline when she pulled over by the side of the road. She admitted to driving with a suspended license, which resulted in the impoundment of her vehicle. Petitioner stated that a CPS worker came to her home and told her to sign paperwork or else C.R. would be removed from her care. In response, petitioner called 9-1-1 because "the allegations against her made no sense." Petitioner testified that the CPS worker was demanding and degrading. Petitioner stated that she had been prescribed a number of medications over the years to treat anxiety, attention deficit hyperactive disorder, and stress, but she ceased taking the medications without consulting her doctor. She further explained that she was not a patient of any mental health professional as she believed she no longer had any mental illness. Petitioner admitted to past drug use but denied drug use during the previous year. Petitioner disagreed with Mr. Lawson's findings and claimed that she did not complete his evaluation because he was influenced by the DHHR. She further admitted to sending a message to the DHHR worker that she would not participate in services. Petitioner denied the allegations of domestic abuse with C.R.'s father. The circuit court found petitioner and C.R.'s father in contempt of the court's no contact orders as they continued to live together. Ultimately, the circuit court adjudicated petitioner as an abusing parent based upon her unresolved mental health issues and drug abuse as well as her failure to protect the children from domestic violence.

In July of 2020, petitioner filed a motion for a post-adjudicatory improvement period. The same month, the DHHR filed a motion to terminate petitioner's parental rights, and the guardian filed a report recommending the termination of petitioner's parental rights. Later that month, the circuit court held two final dispositional hearings. A service provider testified that petitioner attended only two parenting sessions. Another provider stated that petitioner submitted to only one drug screen for which she tested positive for methamphetamine. The next provider explained that

petitioner participated in supervised visitations at the DHHR's office, but that petitioner's visits were suspended in February of 2020 after she posted confidential videos of the visits online. Petitioner testified that she cooperated with her psychological evaluation, exercised supervised vitiations with the children, and sought out mental health counseling services but did not obtain medicated mental health treatment. She denied issues of domestic violence with C.R.'s father but stated that she was willing to cooperate with the DHHR's services. Ultimately, the circuit court found that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that the termination of her parental rights was necessary for the children's welfare. The circuit court terminated petitioner's parental rights by order entered on September 24, 2020.[2]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating her parental rights without first granting her a post-adjudicatory improvement period. Petitioner asserts that the DHHR offered her no assistance, including no psychiatric counseling or treatment. She also contends that she presented evidence at the dispositional hearing that she was likely to participate in the terms and conditions of an improvement period.

West Virginia Code § 49-4-610(2)(B) provides that the circuit court may grant a parent a post-adjudicatory improvement period when the parent "demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." "This Court has explained that 'an improvement period in the context of abuse and neglect proceedings is viewed as an opportunity for the miscreant parent to modify his/her behavior so as to correct the conditions of abuse and/or neglect with which he/she has been charged.'" *In re Kaitlyn P.*, 225 W. Va. 123, 126, 690 S.E.2d 131, 134 (2010) (citation omitted). Finally, the circuit court has discretion

---

[2]C.R.'s father's parental rights were terminated below. The permanency plan for C.R. is adoption by her foster mother. K.R.'s father was a nonabusing parent, and the permanency plan for her is to remain in his care.

to deny an improvement period when no improvement is likely. *See In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002).

We find that petitioner failed to demonstrate that she was likely to fully participate in an improvement period. Petitioner disregarded the court's orders and repeatedly violated the court's no-contact order with the child and with C.R.'s father, which resulted in her being held in contempt. Further, she violated the rules of confidentiality of these proceedings by posting videos of her supervised visitations online, causing the suspension of visits in February of 2020. These visits were never reinstated as petitioner continued to live with C.R.'s father. "We have previously pointed out that the level of interest demonstrated by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently and achieve minimum standards to parent the child." *In re Katie S.*, 198 W. Va. 79, 90 n.14, 479 S.E.2d 589, 600 n.14 (1996) (citations omitted). Most importantly, petitioner consistently denied having a substance abuse problem or mental health issues and failed to seek treatment for the same despite Mr. Lawson's recommendations and the circuit court's adjudicatory findings that petitioner's drug use and unresolved mental illness interfered with her ability to parent the children. She further denied any issues of domestic violence with C.R.'s father. We have previously held that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted).

Finally, petitioner confirmed that she sent the text message to the DHHR worker stating that she refused to participate in all services. Holding true to her general refusal to cooperate with services, petitioner failed to submit to all drug screens but one (for which she tested positive for methamphetamine), and she failed to participate in all parenting and adult life skills classes but two. In light of the overwhelming evidence that petitioner was unlikely to participate in the terms and conditions of a post-adjudicatory improvement period, we find no error.

Next, petitioner argues that the circuit court erred in terminating her parental rights when termination was not necessary for the children's welfare and was not in their best interests. Petitioner avers that she was already practicing supervised visitations with K.R. who lived with her father at the time of the filing of the initial petition and that termination of petitioner's parental rights was unnecessary. Petitioner contends that the DHHR did nothing to facilitate mental health treatment for her and if she had received treatment, she could have corrected the conditions of abuse and neglect in the near future.

West Virginia Code § 49-4-604(c)(6) provides that a circuit court may terminate a parent's parental rights upon finding that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination of parental rights is necessary for the child's welfare. Pursuant to West Virginia Code § 49-4-604(d)(3), a circuit court

5

may determine that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected when

> [t]he abusing parent or parents have not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child.

As outlined above, the evidence overwhelmingly shows that petitioner failed to respond to or follow through with a reasonable family case plan. Petitioner places all blame upon the DHHR and fails to acknowledge her own lack of participation and outright refusal to participate in the DHHR's services. Petitioner claims that the DHHR did not do enough to facilitate mental health services yet ignores that the DHHR arranged for Mr. Lawson's psychological evaluation to help her obtain a diagnosis and treatment. Rather, the record shows that petitioner failed to treat the evaluation seriously as she arrived late, took long breaks, and ultimately failed to complete it despite ample time and opportunity to do so. Petitioner finally agreed to participate in services at the dispositional hearing, but only when faced with the termination of her parental rights. Without petitioner's cooperation and participation, the DHHR was unable to implement needed mental health and substance abuse services for petitioner.

Furthermore, the evidence supports the termination of petitioner's parental rights as necessary for the children's welfare as she remained in a violent relationship with C.R.'s father, which would have exposed the children to domestic violence. Additionally, petitioner's drug abuse and mental health issues remained untreated, which would place the children in danger if returned to her care. As such, it is clear that that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect and the children's welfare required termination of petitioner's parental rights.

Finally, regarding petitioner's argument that her parental rights to K.R. should have remained intact since the child was reunified with the father, we have previously held that West Virginia Code § 49-4-604 "permits the termination of one parent's parental rights while leaving the rights of the nonabusing parent completely intact, if the circumstances so warrant." *In re Emily*, 208 W. Va. 325, 344, 540 S.E.2d 542, 561 (2000). Further, "simply because one parent has been found to be a fit and proper caretaker for [the] child does not automatically entitle the child's other parent to retain his/her parental rights if his/her conduct has endangered the child and such conditions of abuse and/or neglect are not expected to improve." *Id*. Here, there was substantial evidence that petitioner was unlikely to improve and correct the conditions of abuse and neglect.

Insomuch as petitioner argues that the circuit court should have allowed her more time to obtain mental health and drug treatment, we have previously held the following:

> "[C]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened, and this is particularly applicable to children under the age of three years who are more susceptible to illness, need consistent close interaction

with fully committed adults, and are likely to have their emotional and physical development retarded by numerous placements." Syl. Pt. 1, in part, *In re R.J.M.,* 164 W.Va. 496, 266 S.E.2d 114 (1980).

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 4. Further, we have held that

"[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). As such, we find no error in the termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its September 24, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: June 22, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton

7